PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DONALD WILLIS, | )<br>) CASE NO. 1:17CV1112 |
| Plaintiff, | )<br>) |
| v. | ) JUDGE BENITA Y. PEARSON<br>) |
| CLEVELAND METROPOLITAN SCHOOL<br>DISTRICT, *et al.*, | )<br>)<br>) |
| | ) **ORDER** |
| Defendants. | [Resolving ECF No. 35] |

Pending before the Court is Defendants' Motion for Summary Judgment (ECF No. 35). In his Complaint (ECF No. 1), Plaintiff Donald Willis alleges race-based employment discrimination under Title VII of the federal Civil Rights Act, 42 U.S.C. § 2000e-2, *et seq.*, and Ohio Rev. Code § 4112.02. He also alleges unlawful retaliation, Ohio Rev. Code § 4112.02(I), and intentional infliction of emotional distress under Ohio common law. For the reasons that follow, the Court grants Defendants' motion in part and denies it in part.

## I. Disputed and Undisputed Facts

Mr. Willis, an African-American man, was a teacher at Paul Revere School in Cleveland Metropolitan School District ("School District") from August 2012 until June 2015. ECF No. 25 at PageID#: 170, ¶ 7. More precisely, Mr. Willis served as an "Intervention Specialist," in which he taught students in sixth, seventh, and eighth grade. *Id.* At any given time, he was responsible for teaching between four and nine students who were "emotionally disturbed," ECF No. 26-1 at PageID#: 311-12, 430-31; ECF No. 33-1 at PageID#: 1617, and he was responsible for drafting

(1:17cv1112)

and maintaining their individualized education plans. ECF No. 26-1 at PageID#: 380; ECF No. 33-1 at PageID#: 1570-71. In his position as an intervention specialist, Mr. Willis was part of a team that was responsible for drafting and maintaining students' "behavior intervention plans" when they were necessary. ECF No. 33-1 at PageID#: 1527-28.

Defendant Christopher Myslenski, a Caucasian man, was the Assistant Principal at Paul Revere School during the 2012-2013 school year, and he was the Principal during the 2013-2014 and 2014-2015 school years. ECF No. 25 at PageID#: 170. For all three of those school years, Mr. Myslenski was Mr. Willis's supervisor. *Id.* As Mr. Willis's supervisor, he performed announced and unannounced observations of Mr. Willis's classroom and evaluated him based on the Teacher Development and Evaluation System ("TDES"). *Id.*; *see also, e.g.*, ECF No. 33-47. The TDES framework assessed teachers in four categories: (1) planning and preparation, (2) classroom environment, (3) teaching and learning, and (4) professional responsibilities. ECF No. 33-1 at PageID#: 1386; *see also, e.g.*, ECF No. 35-3.

Mr. Willis alleges that, during that three-year period of supervision, Mr. Myslenski engaged in "harassment, micromanaging, disparate treatment." ECF No. 26-1 at PageID#: 368-69. At his deposition, Mr. Willis testified that Mr. Myslenski interfered in his classroom on a weekly basis even though other teachers were less closely scrutinized. ECF No. 26-1 at PageID#: 338; ECF No. 27-1 at PageID#: 718. Mr. Willis also testified that Mr. Myslenski directed other teachers to send their disruptive students to his classroom for intervention but not to other teachers' classrooms. ECF No. 26-1 at PageID#: 419-20; *see also* ECF No. 26-60.

2

(1:17cv1112)

The parties agree that Mr. Myslenski verbally reprimanded Mr. Willis on at least two occasions: once because Mr. Willis failed to supervise students in the hallway during a change in classes, ECF No. 26-1 at PageID#: 301, and once because he was reading personal emails during a staff meeting. *See* ECF No. 33-1 at PageID#: 1479-80. Mr. Myslenski instructed Mr. Willis to perform "Functional Behavior Assessments" for all his students and not to use "Simple Solutions," a certain textbook, in his classroom. ECF No. 37-1 at PageID#: 2427, ¶¶ 8-9. The parties dispute whether other teachers were instructed to do the same. *See* ECF Nos. 37, 39.

On February 23, 2015, Mr. Willis sent an anonymous email to the Chief Executive Officer and two other employees of the School District opining that Mr. Myslenski was "unfit to be in a leadership position in a diverse urban setting such as [the School District]." ECF No. 31-3 at PageID#: 1191. He recounted that Mr. Myslenski "[s]poke to a[n African-American] staff member asking how their weekend was and asked if they 'had fried chicken and a forty ounce during the weekend.'" *Id.* The then anonymous email also stated that Mr. Myslenski had suggested at a staff meeting that certain students need not learn Standard English because "maybe they can get a job in the hood." *Id.* While Mr. Myslenski acknowledges that he asked a staff member about "drinking forties," he does not recall mentioning "fried chicken." ECF No. 31-1 at PageID#: 1430-31. He acknowledges using the term "the hood," but he asserts the term "was taken completely out of context." *Id.* at 1427-28.

On April 7, 2015, Mr. Willis sent another email about Mr. Myslenski to the same three individuals, this time non-anonymously. *See* ECF No. 26-52. This email made the same allegations but also included some charged commentary:

3

(1:17cv1112)

> That exchange ["maybe they can get a job in the hood"] has not left my consciousness as I know that no matter what, if you are Black, if you do not have command of the English language you will not go far in this world. For him to dismiss out of hand the importance of this vital skill [Standard English proficiency] for the children of Paul Revere is unethical, amoral, immoral, unprincipled, indefensible, unforgivable, wrong, you choose.

*Id.*

Mr. Myslenski's supervisor, Valentina Moxon, investigated the allegations and conferred with Mr. Myslenski on April 20, 2015. ECF No. 31-11. She expressed Mr. Willis's concerns to him, and she instructed Mr. Myslenski "to be more reflective of his words and examples, always being aware of the possible implications and perceptions of his comments." *Id.* She also conveyed to Mr. Myslenski that "[c]ultural competencies and openness to diversity are some of the characteristics our school leaders must exhibit at all times." *Id.*

On April 22, 2015, ostensibly based on observations over the course of the school year and the criteria in the TDES framework, Mr. Myslenski issued Mr. Willis an overall performance rating of "ineffective." ECF No. 33-1 at PageID#: 1546-47; ECF No. 33-45. More specifically, Mr. Myslenski identified six TDES criteria in which Mr. Willis failed to meet expectations: "(2a) Respect & rapport, (2b) Challenging & rigorous culture, (2d) Managing student behavior, (3b) Questioning & disc[ussion], (3c) Engaging students, (3d) Using assessments." ECF No. 33-45.

Notwithstanding the poor rating, Mr. Myslenski was prepared to recommend that the School District renew Mr. Willis's contract for another school year. *Id.* Mr. Willis, however, refused to sign the final evaluation form acknowledging "ineffective" performance, ECF No. 35-4 at PageID#: 2273, and Mr. Myslenski subsequently recommended that the School District not renew Mr. Willis's employment contract for the following school year. *See* ECF No. 26-54 at

4

(1:17cv1112)

PageID#: 567.  On June 10, 2015, the School District formally resolved not to renew Mr. Willis's employment contract.  ECF No. 25 at PageID#: 170, ¶ 16.

At some point in Spring 2015, Mr. Willis began working as a professional realtor.  ECF No. 26-1 at PageID#: 210.  Since Fall 2016, he has worked as an intervention specialist for two education-services companies.  Id. at PageID#: 207-08, 217-18.  He is currently employed and earns about $60,000 annually.  Id. at PageID#: 208.  He is capable of managing his personal and business affairs.  Id. at PageID#: 211-14, 358.

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be

5

(1:17cv1112)

resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to [whether] the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. The Court views the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The existence of some factual dispute between the parties will not alone defeat an otherwise properly supported motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III. Law and Analysis

Based on these facts, Mr. Willis argues that Defendants Mr. Myslenski and the School District unlawfully terminated his employment because of his race, retaliated against him for engaging in a protected activity, and intentionally inflicted emotional distress on him. ECF No.

(1:17cv1112)

1. Defendants move for summary judgment on all counts. ECF No. 35. The Court grants Defendants' motion as to Counts 1, 2, 3, and 5, and denies their motion as to Count 4.

### A. Discrimination and Wrongful Termination (Counts 1, 2, and 3)

The Court addresses the first three Counts as a unit. Counts 2 and 3 allege violation of the same statute, Ohio Rev. Code § 4112.02, and the legal allegations are virtually identical under each heading. ECF No. 1 at PageID#: 10-11, ¶¶ 112, 119. Furthermore, although Count 1 alleges a violation of federal law (as opposed to state law), the legal analysis is the same under Title VII and its Ohio counterpart. *Singfield v. Akron Metro. Housing Auth.*, 389 F.3d 555, 561 (6th Cir. 2004) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 421 N.E.2d 128 (Ohio 1981)). If given evidence is insufficient to support a finding of Title VII liability, it is necessarily also insufficient to support a finding of liability under Ohio Rev. Code § 4112.02. *Kimble v. Intermetro Indus.*, 288 F. Supp. 2d 876, 880 (N.D. Ohio 2003). Because Mr. Willis does not make out a *prima facie* case of race-based employment discrimination under Title VII of the federal Civil Rights Act, the Court grants Defendants' motion for summary judgment as to the first three Counts.

Title VII makes it unlawful for an employer to "discharge any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. §§ 2000e-2(a)(1). Mr. Willis may establish a prima facie case under Title VII for racial discrimination by introducing direct evidence of discrimination, or, absent direct evidence, by using the *McDonnell–Douglas* burden-shifting paradigm. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997) (citing *Talley v. Bravo Pitino Rest., L.T.D.*, 61 F.3d 1241, 1248 (6th Cir. 1995)).

(1:17cv1112)

Mr. Willis does not pursue a direct-evidence theory of discrimination. *See* ECF No. 37. Instead, he opts to make his case with indirect, circumstantial evidence.

To prove his case under the *McDonnell-Douglas* burden-shifting paradigm, Mr. Willis must first make out a *prima facie* case of race-based employment discrimination.[1] To satisfy his *prima facie* obligation, Mr. Willis must show that he was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and (4) replaced by a person outside the protected class or treated differently than similarly situated nonminority employees. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).

All agree that the first two prongs are satisfied. *See* ECF No. 25 at PageID#: 169-70, ¶¶ 2, 15-16. In passing, Defendants assert (but do not argue) that Mr. Willis has not established that he was qualified for his position. ECF No. 35 at PageID#: 1941. Mr. Willis responds by citing his nineteen years of experience with the School District and many positive performance evaluations during that time. ECF No. 37 at PageID#: 2415. Because a reasonable jury could find that Mr. Willis was qualified as an intervention specialist, the third prong is also satisfied for summary-judgment purposes.

The parties' real disagreement resides in the fourth prong of the *prima facie* case: Was Mr. Willis treated less favorably than similarly situated nonminority employees? In his brief in

---

[1] If he were to succeed, the burden would shift to Defendants to present a legitimate, nondiscriminatory reason for terminating his employment, at which point Mr. Willis would again bear the burden to prove, by a preponderance of the evidence, that Defendants' proffered rationale is pretextual. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016).

8

(1:17cv1112)

opposition to summary judgment, Mr. Willis focuses on one former colleague to make the case that similarly situated nonminority employees were treated more favorably by Mr. Myslenski and the School District. *Id.* at PageID#: 2416. By Mr. Willis's account, Shannon Cooney, a Caucasian woman, was similarly situated because she, like Mr. Willis, was an intervention specialist at Paul Revere who worked with "emotionally disturbed" students. *Id.*; ECF No. 26-1 at PageID#: 302-03. Ms. Cooney was treated more favorably, he argues, because she was not as closely micromanaged, she had greater latitude in her curricular and instructional choices, and, ultimately, she received a higher performance rating than Mr. Willis and her employment contract was renewed. ECF No. 37 at PageID#: 2416-17.

Undoubtedly, Ms. Cooney was treated "more favorably" than Mr. Willis, at least in a sense. It is more favorable to be employed than not. But the threshold question is whether Ms. Cooney was similarly situated to Mr. Willis in the first place. When assessing whether two individuals were "similarly situated" for this purpose, "the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the relevant aspects.'" *Singfield*, 389 F.3d at 562 (quoting *Ercegovich v. Goodyear Tire and Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). No two individuals are identical, but the Court looks for "relevant similarity." *Singfield*, 389 F.3d at 562 (quoting *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)).

In *Singfield*, the plaintiff was not similarly situated with his nonminority colleagues because "none was similar in the way that is fundamental to this case . . . none of the employees cited allegedly engaged in the range of activities for which Singfield was disciplined." 389 F.3d

9

(1:17cv1112)

at 562. In this case, Ms. Cooney was similar to Mr. Willis in that both were intervention specialists at Paul Revere who worked with emotionally disturbed students. ECF No. 37 at PageID#: 2416. But there is no evidence suggesting that Ms. Cooney is similarly situated "in the way that is fundamental to this case." See Singfield, 389 F.3d at 562. Mr. Willis presents no evidence showing that Ms. Cooney's teaching performance was similar to Mr. Willis's teaching performance or that they practiced similar teaching strategies. More precisely, he presents no evidence to show that Ms. Cooney also struggled to meet expectations in the six discrete areas in which he was rated "ineffective." See ECF No. 33-45.

It is unexceptional, of course, that a better performing employee is more secure in her employment and is subject to less scrutiny from her supervisor. Absent some showing that Ms. Cooney's teaching performance was similar to his own (for instance, with notes of her TDES observations and evaluations), there is no evidence that any similarly situated, nonminority employee was treated more favorably than Mr. Willis. See Singfield, 389 F.3d at 562. He therefore fails to meet his *prima facie* burden under Title VII. Defendants have no obligation, then, to identify a legitimate, nondiscriminatory reason for terminating his employment.

Because Mr. Willis's federal-law allegation fails, the counterpart state-law allegations necessarily also fail. See Kimble, 288 F. Supp. 2d at 880. As to Counts 1, 2, and 3, there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law. Summary judgment is granted as to those Counts.

10

(1:17cv1112)

### B. Retaliation (Count 4)

The remaining Counts (retaliation and intentional infliction of emotional distress) are state-law claims. ECF No. 1 at PageID#: 11-12. Although the claims in Counts 4 and 5 do not arise under federal law and the parties are not diverse, the Court retains subject-matter jurisdiction under 28 U.S.C. § 1367. Although the Court "may decline to exercise supplemental jurisdiction" under these circumstances, it need not. *See* 28 U.S.C. § 1367(c). In this case, concerns about judicial economy, convenience, and fairness all weigh in favor of keeping Counts 4 and 5 in federal court—the parties have litigated for sixteen months in this Court, and trial is less than two months away. *See Krambeck v. Children and Families of Iowa*, 451 F. Supp. 2d 1037, 1043-44 (S.D. Iowa 2006). The Court also observes that Mr. Willis could just as well have brought his retaliation claim under federal law, *see* 42 U.S.C. § 2000e-3(a), under which heading the Court's analysis would be identical.

Under Ohio Rev. Code § 4112.02(I), it is unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section . . . ." Mr. Willis alleges that Mr. Myslenski and the School District terminated his employment as retaliation for sending the two emails—on February 23, 2015, and April 7, 2015, respectively—accusing Mr. Myslenski of racial prejudice. ECF No. 1 at PageID#: 11.

To establish a case of retaliation, a claimant must prove that (1) he engaged in a protected activity, (2) the defending party was aware that the claimant had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a

11

(1:17cv1112)

causal connection between the protected activity and adverse action. *Greer-Burger v. Temesi*, 879 N.E.2d 174, 180, ¶ 13 (Ohio 2007). The second and third prongs are undisputed. The Court addresses the first and fourth prongs in turn.

Mr. Willis argues that complaining to School District officials about Mr. Myslenski's remarks ("fried chicken and a forty ounce" and "they can get a job in the hood") was a protected activity under Ohio Rev. Code § 4112.02(I). ECF No. 37 at PageID#: 2420-21. Defendants disagree, noting that Mr. Willis himself described the remarks (in the first email) as "at best culturally insensitive." ECF No. 35 at PageID#: 1943. Defendants also argue that, because the alleged comments themselves are not illegal under Ohio law, Mr. Willis's indignant emails do not constitute "[opposition to] any unlawful discriminatory practice" defined in the Ohio nondiscrimination statute. *Id.*

As noted, "federal case law interpreting Title VII of the Civil Rights Act of 1964 . . . is generally applicable to cases involving alleged violations of [Ohio Rev. Code § 4112]." *Plumbers & Steamfitters*, 421 N.E.2d at 131. For that reason, the Court looks to both state and federal case law to assess whether Mr. Willis's email complaints were "protected" under Ohio's counterpart to Title VII.

"When an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity." *Crawford Metro. Gov't of Nashville and Davidson Cty., Tenn.*, 555 U.S. 271, 276 (2009) (internal quotation marks and citations omitted). That communication of opposition need not expressly articulate the law and the facts supporting

12

(1:17cv1112)

the allegation of unlawful discrimination. Rather, it is sufficient if it is "based on a reasonable and good faith belief that the challenged conduct is unlawful." *Amesse v. Wright State Physicians, Inc.*, 2018 WL 678286 (Ct. App. Ohio Feb. 2, 2018) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000)).

In his emails, Mr. Willis stated, "I believe [Mr. Myslenski] is unfit to be in a leadership position in a diverse urban setting such as [the School District]," and, "I feel that [Mr. Myslenski] is not fit to be the educational 'leader' of students, who look like the ones here at Paul Revere." ECF No. 26-51; ECF No. 26-52. Mr. Willis expressly asserted his belief that Mr. Myslenski was racially biased and asked for him to be removed from his position. ECF No. 26-51; ECF No. 26-52. He insisted that Mr. Myslenski's alleged attitude toward African-American students was "unethical, amoral, immoral, unprincipled, indefensible, unforgivable, wrong, you choose." ECF No. 26-52. It would be parsing to suggest that Mr. Willis did not "oppose" what he, reasonably and in good faith, believed to be an "unlawful discriminatory practice."

Other courts have ruled that an employee's opposition to discriminatory remarks can be protected activity. In *Alexander v. Gerhardt Enters., Inc.*, an employee sent a memorandum to her superiors reporting that another superior had uttered racist slurs. 40 F.3d 187, 195 (7th Cir. 1994). Sending the memorandum, in that case, was protected activity because the document "set out her position as well as her requested relief" and was meant "to prevent similar comments in the future." *Id.* In *Rowland v. Franklin Career Servs., LLC*, a district court ruled that an employee engaged in protected activity when he reported that his superiors had commented, "[N***]rs didn't have no place in a truck." 272 F. Supp. 2d 1188, 1207 (D. Kan. 2003). In both

13

(1:17cv1112)

cases, reporting racially prejudicial comments up the chain was protected activity, even without express allegations of unlawfulness. *Id.* In this case, too, the Court rules that Mr. Willis's emails to School District officials alerting them to Mr. Myslenski's alleged racial prejudice were protected under Ohio's anti-retaliation statute.

Defendants also argue that Mr. Willis fails his *prima facie* retaliation case because he fails to show "a causal connection between the protected activity and adverse action." *Greer-Burger*, 879 N.E.2d at 180, ¶ 13. Causation is a question of fact.

Temporal proximity between the protected activity and the adverse action is relevant to assessing causation, *Singfield*, 389 F.3d at 563, but it is not alone sufficient unless the timing is "unusually suggestive". *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (quoting *Cardenas v. Massey*, 269 F.3d 251, 264 (3d Cir. 2001)). In this case, even though Mr. Myslenski's recommendation not to renew Mr. Willis's contract came less than three weeks after Mr. Willis sent his second email and within four days of Mr. Myslenski's learning about that email, *see* ECF No. 26-52; ECF No. 31-11; ECF No. 35-4 at PageID#: 2273, the timing alone is not "unusually suggestive." The nonrenewal recommendation occurred at the expiration of Mr. Willis's contract. *See* ECF No. 26-36. The end of the school year was the only time Mr. Myslenski and the School District could possibly have made the decisions they made.

Nevertheless, when considered alongside other allegedly retaliatory conduct, the temporal proximity between Mr. Willis's emails and Mr. Myslenski's nonrenewal recommendation gives rise to a triable issue of fact. *See Mickey*, 516 F.3d at 529. Although Mr. Myslenski was prepared to recommend renewal of Mr. Willis's contract, ECF No. 33-45, he reversed his

14

(1:17cv1112)

position four days after being admonished by Ms. Moxon, in response to Mr. Willis's emails, to be "more reflective of his words and examples," and to bear in mind that "[c]ultural competencies and openness to diversity are some of the characteristics our school leaders must exhibit at all times." ECF No. 31-11.

Mr. Myslenski and the School District contend that Mr. Myslenski changed his position only because Mr. Willis "refused to acknowledge that of the deficiencies in his instructional practice existed," and not because Mr. Myslenski was rebuked by his supervisor, Ms. Moxon. ECF No. 33-1 at PageID#: 1547. A jury may choose to believe Defendants' version of events, but such a conclusion is for a jury to draw, not the Court.

"The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Because Mr. Willis has met his *prima facie* burden on his retaliation claim, the Court denies summary judgment as to Count 4.

**C. Intentional Infliction of Emotional Distress (Count 5)**

Intentional infliction of emotional distress, under Ohio common law, has four elements: (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to

15

(1:17cv1112)

endure it." *Ashcroft v. Mt. Sinai Med. Ctr.*, 588 N.E.2d 280, 284 (quotation marks and citations omitted).

Mr. Willis does not present evidence to show that any infliction of distress was intentional. He does not show that Mr. Myslenski's alleged remarks, while offensive, amounted to more than "insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Clay v. Shriver Allison Courtley Co.*, 2018 WL 4043185, at *7, ¶ 53 (Aug. 16, 2018). And he does not demonstrate mental anguish that no reasonable man could be expected to endure. Mr. Willis testified at his deposition that he is not able to clean around the house because of his depression,[2] ECF No. 26-1 at PageID#: 358, but he acknowledged that he has been gainfully employed since being terminated from the School District, *id.* at PageID#: 210-14, that he is able to perform the functions of his new job, cook for himself, bathe himself, and dress himself. *Id.* at PageID#: 358.

Because Mr. Willis fails to meet the *prima facie* burden of intentional infliction of emotional distress under Ohio common law, the Court grants summary judgment for Defendants as to Count 5.

### IV. Conclusion

Because Mr. Willis fails to satisfy his *prima facie* burden on Counts 1, 2, 3, and 5, the Court grants Defendants' motion for summary judgment (ECF No. 35) as to those Counts.

---

[2] His testimony was apparently based on a self-diagnosis.
    **Q.** What's preventing you from cleaning?
    **A.** I would say depression. I'm not a doctor, but definitely depression.
ECF No. 26-1 at PageID#: 358.

16

(1:17cv1112)

Because a genuine dispute of material fact exists with respect to Mr. Willis's retaliation claim, the Court denies summary judgment as to Count 4.

IT IS SO ORDERED.

| | |
|---|---|
| September 7, 2018 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |